UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-cr-80088-AMC

**UNITED STATES OF AMERICA**

vs.

**VIRGINIA ELENA CIORECAN,**

        **Defendant.**

_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and **VIRGINIA ELENA CIORECAN** (hereinafter referred to as the "defendant") enter into the following agreement:

1.    The defendant agrees to plead guilty to Count 1 of the Indictment, which charges bank fraud, in violation of Title 18, United States Code, Section 1344. At sentencing, the government will seek dismissal of the remaining counts of the Indictment.

2.    The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory

1

sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that as to Count 1, the Court may impose a statutory maximum term of imprisonment of up to thirty years, followed by a term of supervised release of up to five years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $1,000,000.00.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's

background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. The Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. However, the Office will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the Office prior to entering this Agreement; or (3) commits any misconduct after entering into this Agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

(a) Pursuant to Section 2B1.1(a)(1) of the Sentencing Guidelines, the Base Offense Level is 7;

(b) Loss: Pursuant to sections 2B1.1(b)(1)(F) and 1B1.3 of the Sentencing Guidelines, the relevant amount of actual, probable, or intended loss resulting from the offenses committed, and described in paragraph 1 of this agreement, is more than $95,000 and less than $150,000, resulting in a ten-level increase in the offense level;

(c) Pursuant to Section 2B1.1(b)(2)(A)(i) of the Sentencing Guidelines, two levels are added because the offense involved ten or more victims;

(d) Pursuant to Section 2B1.1(b)(11)(A)(ii) of the Sentencing Guidelines, two levels are added because the offense involved the possession or use of any authentication feature;

(e) There are no further applicable enhancements or reductions under the guidelines;

(f) If the elements of paragraphs 6 are satisfied, the offense level would decrease by three levels;

(g) The resulting Total Offense Level would be 18; and

(h) The parties are free to recommend any sentence.

8. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense, in violation of 18 U.S.C. § 1344, pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c), and the provisions of 21 U.S.C. § 853.

9. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

10. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense of conviction. The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

11. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw her plea based upon the Court's decision not to accept a sentencing recommendation made by the

defendant, the government, or a recommendation made jointly by both the defendant and the government.

12.     This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 10/3/22         By: _____
                           MARTON GYIRES
                           ASSISTANT UNITED STATES ATTORNEY

Date: 10/7/22         _____
                      DAVID EDWARD MAGILLIGAN
                      ATTORNEY FOR DEFENDANT

Date: 10/7/22         _____
                      VIRGINIA ELENA CIORECAN
                      DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-cr-80088-AMC

UNITED STATES OF AMERICA

vs.

VIRGINIA ELENA CIORECAN,

Defendant.
_____/

## STIPULATION OF FACTS AND ACKNOWLEDGMENT OF OFFENSE ELEMENTS IN SUPPORT OF GUILTY PLEA

The United States of America, by and through its undersigned Assistant United States Attorney, and **VIRGINIA ELENA CIORECAN**, (hereinafter referred to as "CIORECAN" or "the Defendant"), together with her counsel, admit that the government can prove the allegations contained in Count 1 of the Indictment, which charges bank fraud, in violation of Title 18, United States Code, Section 1344. The Defendant stipulates that those allegations and the following recitation of the facts shall constitute the underlying factual basis. These facts are not all of the facts known to the government in this case and are offered merely to provide a sufficient factual basis to support the defendant's guilty plea:

Truist Bank referred this matter to the USPIS. Included in the referral were bank records documenting that in June 2021, two checking accounts were opened at the bank, one in the name with initials "M.I." ("Account 1"), and the second in the name with initials "A.M." ("Account 2"), and that multiple stolen out-of-state checks were deposited into the two accounts. These checks were made out to various churches and schools in Mississippi and a Medical Office in Missouri. The bank furnished ATM surveillance images of an unidentified male and female depositing the checks in the Bank via ATM terminals. The images were then sent to Customs and Border Patrol ("CPB") Agents who ran the ATM images through facial recognition. CBP was able to match the ATM images to Virginia CIORECAN and Catalin Trandafir as both had previously entered the U.S. illegally, thus, their images were in a CPB database.

Account 1 was opened by CIORECAN on or about June 8, 2021, using two forms of ID, a Romanian Passport and Identity Card, both bearing CIORECAN's photograph. Account 2 was opened by CIORECAN on or about June 22, 2021, using one form of ID, a different Romania Passport, bearing CIORECAN's photograph.

Between July 14, 2021 and August 12, 2021, approximately $57,540.50 in checks were deposited into Accounts 1 and 2. Most of these checks were from the state of Mississippi and the majority were made payable to churches/schools and medical offices. All the checks were deposited at bank branches in Palm Beach County. Surveillance images were available in 12 of the 13 deposits. CIORECAN and Trandafir were identified making the deposits. Trandafir is seen on surveillance images making 6 of the deposits (four deposits into Account 1 and two deposits into Account 2). Approximately $33,700.00 was withdrawn from Account 1 and 2 by CIORECAN and Trandafir.

Postal Inspector Arena contacted all of the payees listed on the indictment and determined that the checks were stolen from them and that no one had permission to take or deposit the checks into Account 1 or 2.

CIORECAN and Trandafir were both later arrested together on or about May 11, 2021 in Pasco County, FL after a traffic stop. The stop was for a traffic violation, and they were the only occupants. Searches revealed that CIORECAN had 7 debit cards in her purse that were in other names. Bank records show that at least 6 of these accounts were opened with a listed customer address of at Douglass Avenue, West Palm Beach, FL. This address was also listed in a Truist Bank account under the name "Virginia CIORECAN" as well as a Truist account under the name "Catalin Trandafir." Subpoena returns showed that one of the debit cards was a Truist bank card in the name of "A.B." Bank records show that this bank account was opened using a Romanian passport ID on or about April 19, 2022 and CIORECAN is on surveillance images making an initial deposit into the account. Another one of the 7 debit cards was a TD Bank account also in the name of "A.B." Bank records show that the same Romanian passport number was used to open this account as the aforementioned Truist account. This debit card for this account was used throughout Florida, Georgia, Tennessee, Kentucky, Missouri, and Illinois. Another one of the debit cards was a TD bank account with the name "F.P." Bank records show that the account was opened in January 2022 using an Italian passport. This account had about 50 checks deposited in the amount of approximately $17,666. These checks appear to be stolen checks from churches. Another one of the debit cards was for a TD bank account under the name "J.C.," which was opened in December 2021 using a Romanian passport. This account had approximately 84 stolen checks deposited totaling approximately $68,334.

Another one of the debit cards was for another TD bank account under the name "L.S." This account had approximately $58,509 worth of stolen checks deposited into it.

Truist bank records show that an account in the name "Catalin Trandafir" was opened on or about October 13, 2021 through the use of a Romanian passport bearing the name "Catalin Trandafir" and his photograph. This account had 31 stolen checks from churches deposited into it between December 16, 2021 and January 18, 2022. The deposits totaled approximately $36,409.07. The debit card for this account was used in Florida, Alabama, Mississippi, Arkansas, Missouri, Illinois, Tennessee, and Georgia.

USPIS in St. Louis, MO provided Bank of America bank records relating to a bank account opened in the name of Virginia CIORECAN using a Romanian passport bearing the name Virginia CIORECAN. This account was opened in November 2021.

On or about November 9, 2021, CBP in Miami, Florida seized two FedEx packages inbound to the United States from Bogota, Colombia, addressed to "Izabela Trandafir" in Roland Heights, California. A search of the parcels revealed that each package contained one Romanian passport, one Romanian identification card, and one driver's license. The photograph for each document was that of Virginia CIORECAN. The names on the documents had the initials C.C. and L.D. (one package had ID documents for the name C.C. and the other for the name L.D.). An DHS/HSI laboratory confirmed that all six documents were counterfeit.

The total amount of stolen checks deposited by CIORECAN and Trandafir is approximately $238,459.

I am aware of and understand the nature of the charges to which I am pleading guilty, because I have discussed the charges and what the prosecutor must prove to convict me with my attorney. I understand that the United States must prove the following facts (or "elements") of the offense beyond a reasonable doubt:

> (1) the Defendant knowingly carried out or attempted to carry out a scheme to defraud a financial institution, or to get money, assets, or other property from a financial institution, by using false or fraudulent pretenses, representations, or promises about a material fact;

(2) the false or fraudulent pretenses, representations, or promises were material;
(3) the Defendant intended to defraud the financial institution; and
(4) the financial institution was federally insured.

I agree that the facts contained in this document are sufficient to prove these elements beyond a reasonable doubt.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 9/30/22

By: _____
MARTON GYIRES
ASSISTANT UNITED STATES ATTORNEY

Date: 10/7/22

_____
DAVID EDWARD MAGILLIGAN
ATTORNEY FOR DEFENDANT

Date: 10/7/22

_____
VIRGINIA ELENA CIORECAN
DEFENDANT

4